Trenton R. Kashima, Esq.
FINKELSTEIN & KRINSK, LLP
550 West C St., Suite 1760
San Diego, CA 92101
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

James Hawkins, SBN 192925
james@jameshawkinsaplc.com
Gregory Mauro SBN 222239
greg@jameshawkinsaplc.com
JAMES HAWKINS, APLC
9880 Research Drive, Suite 200
Irvine, CA. 92618
Tel: 949-387-7200

*Counsel for Plaintiff and Proposed Class and Collective Members*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JORDAN TERRADO, PAKTIN KARIM**, and **JOSHUA ATOE** individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> **ACCREDITED DEBT RELIEF, LLC, SHAWN R. SYNDERGAARD, BENJAMIN P. SCHWAN, and BRIAN M. STONE,** jointly and severally, as <br><br> Defendants. | Case No.: **'17 CV2509 CAB NLS** <br><br><br> **FLSA COLLECTIVE ACTION/ CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs, JORDAN TERRADO, PAKTIN KARIM, and JOSHUA ATOE (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective/Class Action Complaint against Defendants ACCREDITED DEBT RELIEF, LLC, SHAWN R. SYNDERGAARD, BENJAMIN P. SCHWAN, and BRIAN M. STONE (hereinafter collectively referred to as "Defendants"), jointly and severally, and state as follows:

## INTRODUCTION

1.      This is a collective and class action brought for violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") as a FLSA § 216(b) collective action and California state-wide class action pursuant to Fed. R. Civ. P. 23(b)(3) for state law claims, including California Labor Code ("Labor Code"); the California Industrial Welfare Commission Wage Order No. 4; the California Business & Professional Code section 17200, *et seq.*; and others as pleaded below.

2.      Defendants are in the debt-relief business.

3.      As part of their business practices, Defendants utilize tactics to generate their leads, including but not limited to contacting and enticing financially distressed consumers to hire Accredited Debt Relief to connect them with debt relief providers over the phone.  Defendants describe and advertise their business on their internet web site: http://www.accrediteddebtrelief.com/.

4.      Defendants operate under State and Federal regulations and CA Finance Lenders License #60DBO 64392. They publically claim to be accredited by the Better Business Bureau, the International Association of Professional Debt Arbitrators, and the American Fair Credit Council.

5.      Defendants employed call center sales employees, referred to herein as call center agents ("Agents").  Defendants employed these Agents, including Plaintiffs, in call center facilities in San Diego and La Jolla, California, respectively.

6.      Defendants employ over one hundred Agents to make sales calls on prospective customer leads in the form of a call center with inbound and outbound calls.

1

7.    The individuals Plaintiffs seek to represent in this action are current and former Agents who are similarly situated to themselves in terms of their positions, job duties, pay structure, and Defendants' violations of federal and state law.

8.    Defendants required their Agents to work a full-time schedule, plus overtime. However, Defendants did not actually or accurately record their Agents' compensable work time as required by law.

9.    Instead of paying Agents based on hours worked, Defendants paid their Agents on a contingent, commission-only basis.

10.    Defendants' contingent, commission-only compensation system required payment of overtime based on actual wages, including commissions, during each work week.

11.    Defendants did not calculate overtime payments, when they were paid, using the correct regular rate for the Agents, but rather, for example, a fixed hourly rate of $15.80.

12.    Furthermore, Defendants' required Managers to manually alter and falsify time records, giving them direct access to the data in the Paychex system. Defendants' Paychex pay stubs are in large part inaccurate, unreliable, and do not comply with the law.

13.    Defendants also failed to pay Agents for all hours worked.  For example, in the course of performing their job responsibilities, Defendants' Agents used multiple computer networks, software programs, applications, and phone systems.  The time Agents spent booting up and logging into these programs and applications before and after their shifts was compensable because the programs and applications were an integral, indispensable, and important part of the Agents' work and they could not perform their jobs effectively without them.

14.    The Agents performed the same basic job duties and were required to use the same or similar computer networks, software programs, applications, and phone systems.

15.    Defendants knew or could have easily determined how long it took for their

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

Agents to complete their unpaid work, and Defendants could have properly compensated Plaintiffs and the putative Class for this work, but they did not.

16.    In addition, Defendants imposed sales quotas and otherwise operated a compensation plan that encouraged Agents to skip rest and meal periods.  Knowing this, Defendants did nothing to ensure the Agents were afforded their rest and meal periods, and instead, actually changed time records to bury the fact that the rest and meal periods were often not taken.

17.    Plaintiffs seek a declaration that their rights, and the rights of the putative Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendants to such illegal conduct in the future.

### JURISDICTION AND VENUE

18.    This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

19.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because this claim arises from a common set of operative facts and is so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

20.    This Court has general personal jurisdiction over Defendants because Defendants are residents of and conduct business in this State, had systematic and continuous ties with this state, and had agents and representatives in this state.  Thus, Defendants have sufficient minimum contacts with or otherwise purposefully avail themselves of the markets in the State of California, or otherwise has sufficient contacts with this District to justify them being fairly brought into court in this District.

21.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(d) because

Plaintiffs and at least some of the putative Class members worked and were paid in this District and the obligations, liabilities, and breaches complained of herein arose or occurred in this District.  Defendants own, operate, and/or maintain offices, transact business, employ Agents within the District, or otherwise are found within the District. Defendants are within the jurisdiction of this Court for purpose of service of process.

**PARTIES**

22.    Plaintiff, Jordan Terrado, is a resident of El Cajon, California.  He was employed by Defendants as an Agent in San Diego, California from October 24, 2016 through the present date, and will file a consent form to join this collective action lawsuit.

23.    Plaintiff, Paktin Karim, is a resident of San Diego, California. He was employed by Defendants as an Agent in San Diego, California from November 7, 2016 through the present date, and will file a consent form to join this collective action lawsuit.

24.    Plaintiff, Joshua Atoe, is a resident of San Diego, California.  He was employed by Defendants as an Agent in San Diego, California from April 10, 2017 through the present date, and will file a consent form to join this collective action lawsuit.

25.    Additional individuals were or are employed by Defendants as Agents during the past four years and their consent forms will also be filed in this case.

26.    Defendant, Accredited Debt Relief, LLC ("ADR") is a California Limited Liability Company (State No. 201100310151) with a headquarters and service of process address listed as 591 Camino de la Reina, Suite 818, San Diego, California 92108.  Its registered agent for service in California is Shawn Syndergaard.

27.    Defendant ADR is owned and operated by LLC Managers and Defendants Shawn R. Syndergaard, Benjamin P. Schwan, (acting as managing member per California Form LLC-12NC No. 16-496689 filed on Nov. 10, 2016) and Brian M. Stone (collectively "Owner Defendants").

28.     Defendant Syndergaard is believed to be a resident of Arizona, but regularly and systematically does business in San Diego, California through ADR.

29.    Defendant Schwan is believed to be a resident of San Diego, California, and

regularly and systematically does business in San Diego, California through ADR.

30.    Defendant Stone is believed to be a resident of San Diego, California, and regularly and systematically does business in San Diego, California through ADR.

## JOINT EMPLOYER ALLEGATIONS

31.    Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d).

32.    The definition of "employer" under the FLSA is not limited by the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes. *Real v. Driscoll Strawberry Assocs.,* 603 F.2d 748, 754 (9th Cir. 1979).

33.    Congress defined "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), describing this language as "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3, 65 S.Ct. 295, 89 L.Ed. 301 (1945) (quoting 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)); *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300 n.21, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) (same).

34.    The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947). The touchstone is "economic reality." *Goldberg v. Whitaker House Cooperative, Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961).

35.    Two or more employers may jointly employ someone for purposes of the FLSA. *Falk v. Brennan,* 414 U.S. 190, 195, 94 S. Ct. 427, 431, 38 L.Ed.2d 406 (1973).

36.    All joint employers are individually responsible for compliance with the FLSA. 29 C.F.R. § 791.2(a) (1981).

37.    Regulations issued by the Department of Labor give the following examples of joint employment situations:

> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the      employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted).

38.     The ultimate question of whether a party is an "employer" is a legal issue. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469–70 (9th Cir. 1983).  The ultimate determination must be based "upon the circumstances of the whole activity." *Id.* at 1470 (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947).

39.     Defendant ADR entered into written agreements with the Agents regarding, *inter alia*, their compensation, job duties, and job expectations. (***Exhibit A***).

40.     Defendant ADR contracted with PayChex to handle payroll duties, including issue all of the ADR employee paychecks. More specifically, during the applicable statutory period, Pamela Baglieri, an employee of ADR, collected the Agents' payroll and commission data and submitted the data to Defendant Schwan for review and approval.   Defendant Schwan then reviewed, approved, and/or changed the payroll information and sent it back to Ms. Baglieri to process the Agents' paychecks via Paychecks.

41.     Plausibly, by Defendant Schwan's exercise of control, input, and responsibility for issuing accurate, legitimate, and proper paychecks for the Plaintiffs' and all other Agents, he meets the test for joint employer.

42.     The Owner Defendants controlled the rate and method of wage payment for the Agents, including making changes to their commission structure.  *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 967 (N.D. Cal. 2017) (finding multiple companies and individual defendants were joint employers of sales and marketing workers).

43.     The Owner Defendants employed Tsuba Ted Tsuji to serve as Vice

President of Sales and Operations and act on their behalf.  Together, they controlled the rate and method of lead allocations to the Agents, including making changes to their amount of new customer leads through computer programs and other systems commonly referred to as being placed on "limited leads".

44.    Defendant Schwan, with the help of Tsuba Ted Tsuji and the ADR Mangers, enforced the Owner Defendants' changes to the rate and method of lead allocations.

45.    Plausibly, through Defendant Shawn's exercise of control, input, and responsibility over the rate and method of wage payment and limited leads policies and practices for Plaintiffs, he meets the test for joint employer.

46.    Plausibly, through Owner Defendants' exercise of control, input, and responsibility over the rate and method of lead allocation for Plaintiffs, they meet the test for joint employer. *Conde, supra.*

47.    Defendants controlled and dictated when each Agent could take their meal breaks, and discouraged taking of meal breaks by their policies.

48.    Plausibly, by Owner Defendants' exercise of control, input and responsibility over the Agents' meal periods, they meet the test for joint employer.

49.    Likewise, Owner Defendants controlled and dictated when each Agent could take their rest periods, and would discourage the use of rest periods by their policies.

50.    Plausibly, by Owner Defendants' exercise of control, input and responsibility over the Agents' rest periods, they meet the test for joint employer.

51.    Defendants maintained employment records in connection with the Agents. Furthermore, Defendants actively kept, updated, and maintained the Agents' payroll records, commission reports, agreements, and performance evaluations related to their employment.

52.    Plausibly, by all Defendants' exercise of control, input and responsibility over the Agents' employment records, they meet the test for joint employer.

53.    Defendants controlled the training, structure and conditions of employment for Plaintiffs.

54. Plausibly, by Defendants' exercise of control, input, and responsibility over the training, structure and conditions of employment of the Agents, they meet the test for joint employer.

55. Defendant Schwan was also responsible for the day-to-day supervision of Defendants' Agents. Specifically, he was present in the San Diego office regular basis, directing the Agents' work, making sure the Agents were on the phones, and enforcing Defendants' employment policies and practices.

56. Plausibly, by Defendant Schwan's exercise of control, input, and responsibility over the day-to-day supervision of Agents, he meets the test for joint employer.

57. Defendants provided all the necessary tools, equipment and materials used by the Agents. Specifically, they provided the computers, hardware, software, and telephones necessary for the Agents to perform their work. Most importantly, this included the leads.

58. Plausibly, by Defendants providing all necessary tools, equipment and materials used by the Agents, they meet the test for joint employer.

59. The Owner Defendants created and controlled the setting and monitoring of performance goals for the Agents. Specifically, they set quotas and goals, including making changes to commission structures.

60. Plausibly, by Owner Defendants' exercise of control, input and responsibility over the setting and monitoring of performance goals of Plaintiffs, they meet the test for joint employer. *Conde, supra.*

61. Defendant Shawn Syndergaard was responsible for origination of the actual consumer leads provided to the Agents and Defendant Brian Stone implemented the marketing strategies to obtain consumer leads.

62. All Owner Defendants funded Defendants' marketing and lead generation growth and efforts.

63. Plausibly, by the Owner Defendants' origination and supplying of consumer

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

leads to the Agents, they meet the test for joint employer. *Conde, supra.*

64.    Defendant Schwan controlled the hiring and firing of Agents. Specifically, Schwan had the authority to hire and fire Agents as she saw fit, and carried out the hiring and firing of Agents on a regular basis.

65.    Plausibly, by Defendant Schwan's exercise of control, input, and responsibility over the hiring and firing of Agents, he meets the test for joint employer.

66.    Regardless of which of the Defendants is viewed as having had the power to hire and fire, their power over the employment relationship by virtue of their overarching control over the purse strings was substantial, and thus each Defendant meets the test for joint employer. *Bonnette, supra* at 1470.

67.    Regardless of any of the individual criteria for joint employer, as active business owners, Defendants Shawn Syndergaard, Ben Schwan, and Brian Stone also had complete economic control over the employment relationship. The "economic reality" was that they employed Agents to perform sales and call center services for their benefit, and thus they meet the test for joint employer. *Bonnette, supra* at 1470.

68.    The fact that some Defendants may not have exercised each and every aspect of the test for employer under the law, and may have delegated some of the responsibilities to others, does not alter their status as employer; it merely makes them joint employers. *Id.*

69.    Whether employers, or joint employers, each Defendant is nevertheless liable for the wage violations pleaded in this Complaint. *Falk, supra;* 29 C.F.R. § 791.2(a).

70.    The above well-pleaded facts all support Plaintiffs' standing to sue each and every Defendant named herein as a joint employer and seek damages for the alleged violations under a joint employment theory. *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 966 (N.D. Cal. 2017); *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 940 (N.D. Cal. 2016).

71.    Upon information and belief, Defendants jointly employed hundreds of

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

Agents – including Plaintiffs – in California during the last four years to perform debt relief services which include selling the above mentioned services over the phone.

72.    Plaintiffs are informed and believe, and allege thereon, that Defendants are jointly and severally responsible for the circumstances alleged herein, and proximately caused Plaintiffs the fraudulent, unlawful, unfair, and deceptive acts and wage violations complained of herein.

73.    At all times herein mentioned, Defendants approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained of herein.

74.    Defendants acted willfully in violating the laws and regulations pleaded in this Complaint.

75.    At all times herein mentioned, Defendants' acts and omissions proximately caused the complaints, injuries, and damages alleged herein.

## GENERAL ALLEGATIONS

76.    Plaintiff, Jordan Terrado, was employed by Defendants as an Agent in San Diego, California from October 24, 2016 through the present date. In that position, he was compensated on a contingent, commission-only basis and typically worked approximately 40 or more hours per week (and more than 8 hours per day).

77.    Plaintiff, Paktin Karim, was employed by Defendants as an Agent in San Diego, California from November 7, 2016 through the present date.  In that position, he was compensated on a contingent, commission-only basis and typically worked approximately 40 or more hours per week (and more than 8 hours per day).

78.    Plaintiff, Joshua Atoe was employed by Defendants as an Agent in San Diego, California from April 10, 2017 through the present date. In that position, he was compensated on a contingent, commission-only basis and typically worked approximately 40 or more hours per week (and more than 8 hours per day).

79.    Defendants' business model relies upon generating new sales leads, and distributing those leads to the Agents who are responsible for selling Defendants' debt-relief services.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

80.    Defendants procure their leads from other companies including lending exchange brokers like LendingTree, for example.

81.    Defendants' leads are then distributed to Agents based on certain performance and attendance criteria as dictated by Defendants.  For example, if an Agent misses a day of work, they are given fewer and less quality leads upon their return and must work to rebuild their pipeline of leads from Defendants.

82.    For Agents who the Defendants simply didn't like, Defendants also manipulated the leads given to these Agents in an attempt to force them to perform poorly and to give Defendants a reason to fire them.  Defendants did this to at least two former Agents, Mike and Casey.

83.    Throughout their employment with Defendants, Agents were required to work a substantial amount of unpaid off-the-clock time, including overtime, as part of their jobs.

84.    Defendants' Agents were responsible for, among other things:  (a) booting up their computers and logging into several software programs before taking/making phone calls; (b) remaining on the phones for their entire shift; (c) making outbound calls when no calls are incoming; (d) ensuring that every inbound call is accounted for in Defendants' computer systems; (e) if needed, asking sales managers for additional sales leads to call; and (f) logging out of the computer programs and shutting down their computers.

85.    Defendants required their Agents to work rigid schedules, usually consisting of many overtime hours on a weekly basis.

86.    Defendants had strict expectations that their Agents would remain on the phone for their entire shift, every scheduled day, and Defendants threatened discipline if an Agent failed to do so.

87.    Defendants failed to accurately account for and pay for all of the time actually worked by employees which is a clear violation of FLSA's record keeping requirements.  *See* 29 U.S.C. § 211(c).

**Defendants Falsified Their Agents' Time Records**

88.    Defendants did not accurately record the hours the Agents worked, but instead instructed managers to falsify the Agents' time records to reflect a lesser number of hours than those actually worked.

89.    Specifically, Defendants instructed its managers to fill out the Agents' time cards to reflect exactly 40 hours per week and then to collect the Agents' signatures on the timecards, regardless of any overtime the Agents worked.

90.    Additionally, Defendants' managers were instructed to access the ADR payroll system (i.e., Paychex) twice per month and go through each Agents' time records, including clock-ins, meal periods, and clock-outs, in order to: (a) falsely reflect that the Agents were clocking out for meal periods within the first 5 hours of their shifts; (b) limit recorded overtime to 3 hours for good performers; and (c) eliminate any recorded overtime for poor performers.

91.    Because Defendants intentionally falsified the Agents' recorded work time, Defendants' compensation system failed to properly account for and compensate Agents for all time worked, including their overtime hours, during each day and during each workweek.

92.    The hours reflected on the Agents' paystubs are not accurate, were contrived by Defendants, and have no relation to the hours the Agents actually worked for Defendants.   This is a violation of Cal. Lab. Code § 226, which requires that the employer provide accurate wage statements.

93.    As a result of Defendants' timekeeping policies and intentional falsification of records, Plaintiffs and all other Agents were deprived of pay for compensable time worked, including overtime.

**Defendants' Commission-Only Compensation System**

94.    Defendants' Agents were paid on a contingent, commission-only basis. Under this compensation system, Agents were paid a commission of 1% of total paid debt enrolled by consumers (with the exception of certain states that cap fees).

95.    Defendants paid their Agents on a bi-monthly basis, and pursuant to an alternating schedule of draws and commissions pursuant to a written commission & bonus plan.  Defendants' payroll process generally adhered to the following monthly schedule:

a.    Advance in commission paid on the 7th of every month (for period 16th through end of month); and

b.    Earned commission paid on the 21st of every month (for period 1st through the 15th; less previous advance).

96.    The payment on the 7th of each month is determined by an hourly rate of $15.80 per hour for each hour "recorded" by Defendants.

97.    An example of Defendants' compensation system is illustrated through Plaintiff Atoe's paystubs from November 2017. (***Exhibit B***). Those paystubs show the following payments:

a.    Check date November 7, 2017:  $1,371.05 (advance based on hours); and

b.    Check date November 21, 2017: $1,692.97 (commission minus the November 7th advance).

98.    By way of further example, Defendants provided the Agents with a breakdown of these payments by way of an Excel spreadsheet. (***Exhibit C***).

**Off-the-Clock Work**

99.    In addition to their regularly scheduled shifts, Defendants' Agents performed off-the-clock work that went uncompensated.

100.    Pursuant to Defendants' policies, training and direction, Agents were required to startup and login to various secure computer networks, software programs, and applications in order to access information and software.

101.    The Agents' startup and login process takes substantial time on a daily basis with said time ranging from 10 to 15 minutes per day, or even as much as 30 minutes if technical issues arise. Defendants' Agents were never compensated for this time, which directly benefitted Defendants and was an essential part of the Agents' job

responsibilities.

102.   Additionally, Defendants' Agents were required to logout of and close down various programs at the end of each shift. The log-out process occurred each shift with said time ranging from 1 to 2 minutes per day.

103.   Moreover, Defendants' Agents frequently handled calls that could last 60 minutes or more past the end of their scheduled shifts and Defendants failed to pay for that work time.

104.   The U.S. Department of Labor recognizes that call center jobs, like those held by Defendants' Agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." DOL Fact Sheet #64.

105.   The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre- and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." See *Id*., at p. 2.  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

### Meal And Rest Period Violations

106.   Defendants promised each Agent one unpaid meal period during each shift. However, in reality, Defendants often required Agents to work through unpaid meal periods if there were not enough Agents to cover the phones.

107.   Under the federal law, in order to deduct an unpaid meal period from an employees' compensable time, an employee must be completely relieved of his or her employment duties for the entire lunch break. 29 CFR 785.19(a) states:

Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

108. However, Defendants did not provide their Agents with a legitimate bona fide meal period.

109. Under California law, employers must provide a meal period of at least 30 minutes for every five (5) hours worked. Cal. Lab. Code § 512(a) states:

An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

110. Additionally, the applicable Industrial Welfare Commission Wage Order states that an employee is also entitled to a ten (10) minute break for each four (4) hour period, or major fraction thereof, worked.

111. However, Defendants failed to provide their Agents with a 30-minute meal period for every five (5) hours worked, or a rest period for each four (4) hour period worked. Accordingly, Plaintiff and the class are entitled to one additional hour of compensation per workday for a missed meal and rest period.

112. On or about December 6, 2017, by way of an e-mail from Pamela Baglieri to

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

an Agent, it appears that Defendants began implementing a timekeeping policy whereby Agents were required to take a meal period "before the 6th hour" of their shifts.

**Defendant Unlawfully Benefitted From Their Agents' Uncompensated Work**

113.  At all relevant times, Defendants directed and directly benefited from the uncompensated off-the-clock work performed by their Agents.

114.  At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their Agents.

115.  At all relevant times, Defendants were able to track the amount of time their Agents spent working; however, Defendant failed to document, track, or pay its Agents for all the work they performed, including off-the-clock work.

116.  At all relevant times, Plaintiffs were non-exempt employees, subject to the requirements of the FLSA and the California Labor Code.

117.  At all relevant times, Defendants' policies and practices deprived their Agents of wages owed for the off-the-clock work activities and their required meal periods. Because Defendants' Agents typically worked over 40 hours in a workweek, and more than eight (8) hours per day, Defendants' policies and practices also deprived them of overtime pay.

118.  Defendants knew or should have known that Plaintiffs and other Agents' off-the-clock work was compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendants to establish that it acted in good faith.

**Defendants Failed to Properly Calculate the Regular Rate of Pay**

119.  As non-exempt employees, Defendants' Agents were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

120.  Under FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which

16

he is employed." 29 C.F.R. §778.108.

121.   No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.   29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

122.   Defendants' contingent, commission-only compensation did not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

123.   A commission-based employee's regular rate of pay is computed by reference to the number of hours the commission payment is intended to compensate. 29 C.F.R. §778.117.

> This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission. It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval. The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate. *Id*.

124.   There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. The burden is on Defendants to establish that any payment should be excluded. Thus, determining the regular rate starts from the premise that all payments made to Plaintiffs for work performed are included in the base calculation unless specifically excluded by statute.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

125.   Even "[w]hen the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard." 29 C.F.R. §778.118.

126.   Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

127.   Because Defendants' compensation scheme failed to incorporate the regular rate of pay, Defendants failed to properly compensate Plaintiffs and their other Agents under the FLSA.

128.   Under California law, employees are entitled to "no less than one and one-half times the regular rate of pay" for work in excess of eight hours in one workday. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Cal. Lab. Code, § 510(a).

129.   The California Division of Labor Standards Enforcement Manual section 49.2.4.2 provides a reasonable formula for calculating overtime on a flat sum bonus. The flat sum bonus formula set forth in sections 49.2.4.2 and 49.2.4.3 of the Manual, which uses a divisor of straight time, instead of total hours worked to set the regular bonus rate, and a multiplier of 1.5, rather than 0.5, to fix the bonus overtime due, produces "a

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

premium based on bonus" that is necessary to avoid encouraging the use of overtime.

130.    Because Defendants' compensation scheme failed to incorporate the California Division of Labor Standards Enforcement Manual formula, Defendants failed to properly compensate Plaintiffs and its other Agents under the California Labor Code.

131.    Because Defendants' weekly pay period compensation scheme did not pay commissions in the week in which they were earned, Defendants failed to properly compensate Plaintiffs and its other Agents under the California Labor Code. *See e.g.*, *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 663 (Cal. 2014) (An employer may not attribute commission wages paid in one pay period to other pay periods in order to satisfy the minimum earnings prong of the commissioned employee exemption to the overtime requirement in Lab. Code, § 510).

## FLSA COLLECTIVE ACTION ALLEGATIONS

132.    Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former Agents who worked for any Defendants at any time from December 14, 2014 through judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

133.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated Agents.

134.    Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

135.    Consistent with Defendants' policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

136.    All of the work that Plaintiffs and the FLSA Collective members performed

1  was assigned by Defendants, and/or Defendants were aware of all of the work that
2  Plaintiffs and the FLSA Collective members performed.

3        137.   As part of its regular business practice, Defendants intentionally, willfully,
4  and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with
5  respect to Plaintiffs and the FLSA Collective members.   This policy and pattern or
6  practice includes, but is not limited to:

      a.  willfully failing to pay its employees, including Plaintiffs and the FLSA
        Collective, for all hours worked including premium overtime wages for
        all hours worked in excess of 40 hours per workweek; and

      b.  willfully failing to accurately record all of the time that its employees,
        including Plaintiffs and the FLSA Collective, worked for Defendants'
        benefit.

     138.   Defendants are aware or should have been aware that federal law required
them to pay Plaintiffs and the FLSA Collective overtime premiums for all hours worked
in excess of 40 per workweek.

     139.   Defendants failed to properly maintain timekeeping and payroll records
pertaining to the FLSA Collective under the FLSA, 29 U.S.C. 211(c).

     140.   Defendants' unlawful conduct was widespread, repeated, and consistent.

     141.   A collective action under the FLSA is appropriate because the employees
described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The
employees on behalf of whom Plaintiffs bring this collective action are similarly situated
because (a) they have been or are employed in the same or similar positions; (b) they
were or are performing the same or similar job duties; (c) they were or are subject to the
same or similar unlawful practices, policy, or plan; and (d) their claims are based upon
the same factual and legal theories.

     142.   The employment relationships between Defendants and every proposed
FLSA Collective member are the same and differ only by name, location, and rate of pay.

The key issues – the amount of uncompensated off-the-clock work owed to each employee – does not vary substantially among the proposed FLSA Collective members.

143.  There are many similarly situated current and former Agents who were underpaid in violation of the FLSA who would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join it.

144.  Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

145.  Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

146.  Plaintiffs estimate the proposed FLSA Collective, including both current and former employees over the relevant period will include several hundreds, if not thousands, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

147.  Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of all similarly situated current and former Agents of Defendants who are or were employed at any time in the last four years.  Plaintiffs propose the following class definition:

*All current and former Agents who worked for any Defendants in California at any time from December 14, 2013 through judgment.*

Plaintiffs reserve the right to amend the putative class definition if necessary.

148.  Plaintiffs share the same interests as the putative class and will be entitled under the California Labor Code to unpaid overtime compensation, attorneys' fees, and costs and lost interest owed to them under nearly identical factual and legal standards as the remainder of the putative class.

149.  The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendants employed hundreds, if not thousands, of

Agents throughout California.  The Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendants' personnel, scheduling, time, phone, and payroll records, and from input received from the putative Class members.

150.  The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendants engaged in a common course of conduct that violated the legal rights of Plaintiffs and the Class.  Individual questions that Plaintiffs' claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

    a.  Whether Defendants engaged in a policy or practice of failing to pay each Class member regular wages for each non-overtime hour worked.

    b.  Whether Defendants engaged in a policy or practice of failing to pay each Class member overtime compensation for each overtime hour worked;

    c.  Whether Defendants violated Labor Code sections 221 and 223 by making unlawful deductions to Class members' wages;

    d.  Whether Defendants failed to provide each Class member with at least one 30-minute meal period on every workday of at least 5 hours and a second 30-minute meal period on every workday of at least 10 hours as required by the California Employment Law and Regulations;

    e.  Whether Defendants violated sections 201 to 203 of the Labor Code by willfully failing to pay all wages and compensation due each Class member who quit or who was discharged;

    f.  Whether Defendants violated section 226 of the Labor Code by willfully failing to provide accurate itemized wage statements showing the number of hours worked by each Class member and

the corresponding hourly rate;

g.  Whether Defendants violated sections 1174 and 1175 of the Labor Code and the applicable Industrial Welfare Commission Orders by failing to maintain records pertaining to when Class members began and ended each work period, the total daily hours worked, and the total hours worked per pay period;

h.  Whether Defendants violated section 510 of the Labor Code and the applicable Industrial Welfare Commission Orders by failing to accurately calculate regular rates of pay for overtime purposes;

i.  Whether Defendants violated section 2208 of the Labor Code by willfully failing to reimburse each Class member any reasonable business expenses incurred;

j.  Whether Defendants were unjustly enriched by the work and services performed by Class members without compensation;

k.  Whether Defendants engaged in unfair business practices in violation of Business and Professions Code section 17200, *et seq.*;

l.  Whether Defendants breached their duty of good faith and fair dealing by limiting or manipulating the leads given to their Agents; and

m.  Whether Defendants should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating California state law.

151.  The status of all individuals similarly situated to Plaintiffs raises an identical legal question: whether Defendants' Agents are entitled to back wages, including overtime.

152.  The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiffs and the putative Class members were all employed by Defendants and performed their job duties without receiving wages, including overtime wages, owed for that work.

153.  The Class meets the adequacy requirement of Rule 23(a)(4) because there is

no apparent conflict of interest between Plaintiffs and the putative Class members, and because Plaintiffs' attorneys have successfully prosecuted many complex class actions, including wage and hour class and collective actions, and will adequately represent the interests of Plaintiffs and the putative Class members.

154.   The putative Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

155.   The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

156.   Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds or even thousands of identical actions.   Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

## COUNT I
## VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq.*
## FAILURE TO PAY OVERTIME WAGES

157.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

158.   At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

159.   At all times relevant to this action, Plaintiffs were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

160.    Plaintiffs and the FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

161.    Defendants are not "retail or service establishments" as defined by 29 U.S.C. § 213(a)(2) of the FLSA.

162.    Plaintiffs either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

163.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

164.    At all times relevant to this action, Defendants required Plaintiffs and the FLSA Collective members to perform off-the-clock work each shift, but failed to pay these employees the federally mandated overtime compensation for this work.

165.    The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective members is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

166.    In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage.  29 U.S.C. § 207.

167.    Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have determined how long it took for their Agents to perform their off-the-clock work. Further, Defendants could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

168.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, each employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

## COUNT II

## VIOLATION OF CALIFORNIA LABOR CODE §§ 510, 1194, 1198
## AND IWC WAGE ORDER 4 – FAILURE TO PAY OVERTIME

169.  Plaintiffs re-allege and incorporate all previous paragraphs herein.

170.  At all relevant times, Defendants regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime compensation.

171.  At all relevant times, Plaintiffs and the Class regularly performed non-exempt work and were thus subject to the overtime requirements of California law.

172.  Labor Code §§ 510 and 1198 and Industrial Welfare Commission ("IWC") Wage Order No. 4 § 3(A) provide that: (a) employees are entitled to compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of eight (8) hours in a workday up to twelve (12) hours in a workday, in excess of forty (40) hours in a workweek, and for the first eight (8) hours of work on the seventh (7th) consecutive day or a workweek; and (b) employees are entitled to compensation at the rate of twice their regular rate of pay for all hours worked in excess of twelve (12) hours in a workday, and in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

173.  At all relevant times, Plaintiffs and the Class regularly worked in excess of eight (8) hours in a workday and/or in excess of forty (40) hours in a workweek.

174.  At all relevant times, Defendants failed and refused to pay Plaintiffs and the Class members for any and all hours actually worked in excess of the scheduled shift.

175.  Defendants intentionally, maliciously, fraudulently and with the intent to deprive the Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying overtime by reducing the rate of pay to Plaintiffs and other Class members who worked overtime hours.

176.  Plaintiffs and the Class were entitled to receive overtime compensation at

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

their lawful regular rate of pay, including the shift differential where applicable. Defendants' failure to pay lawful premium overtime wages, as alleged above, was a willful violation of Labor Code §§ 510, 1198, and IWC Wage Order No. 4.

177. Wherefore, Plaintiffs demand payment of the unpaid balance of the full amount of wages due for unpaid time worked, as well as overtime premiums owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendants' failure to pay for all time worked and such premium compensation, as is required under California law.

## COUNT III

## VIOLATION OF CALIFORNIA LABOR CODE §§ 221 and 223
## UNLAWFUL DEDUCTIONS

178.  Plaintiffs re-allege and incorporate all previous paragraphs herein.

179. At all relevant times, Defendants regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime compensation.

180. Defendants made deductions from Plaintiffs' and the Class members' paychecks in the amount of the overtime premiums earned by the employee during the pay period so as to avoid paying overtime compensation.

181. Labor Code § 221 provides it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by employer to employee.

182.  Labor Code § 223 provides that where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract. Labor Code section 225 further provides that the violation of any provision of Labor Code §§ 221 and 223 is a misdemeanor.

183.  As a result of the conduct alleged above, Defendants unlawfully collected or received from Plaintiffs and the Class part of the wages paid to their employees.

184.   Wherefore, Plaintiffs demand the return of all wages unlawfully deducted from the paychecks, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 225.5 and 1194.

## COUNT IV

## VIOLATION OF CALIFORNIA LABOR CODE §§ 226.7 and 512
## FAILURE TO PROVIDE MEAL AND REST BREAKS

185.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

186.   Labor Code § 512, and IWC Wage Order No. 7 § 11(A) and (B) provide that an employer may not employ a person for a work period of more than five (5) hours without providing the employee with a meal period of not less than thirty (30) minutes, and may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than (30) minutes.

187.   Additionally, Defendants are required to provide a rest period of ten (10) minute break for each four (4) hour period, or major fraction thereof, worked.

188.   At all relevant times, Plaintiffs and the Class consistently worked in excess of five (5) or ten (10) hours in a day.

189.   At all relevant times, Defendants regularly required employees to perform work during their first and/or second meal periods, without proper compensation. Further, Defendants did not provide rest breaks as is required by California law. Defendants' practice of requiring employees to perform work during their legally mandated meal and rest periods without premium compensation is a violation of Labor Code §§ 226.7 and 512, and IWC Wage Order No. 7.

190.   Defendants purposefully elected not to provide meal and rest periods to Plaintiffs and Class members, and Defendants acted willfully, oppressively, and in conscious disregard of the rights of Plaintiffs and the Class members in failing to do so.

191.   Plaintiffs are informed and believe Defendants did not properly maintain records pertaining to when Plaintiffs and the Class members began and ended each meal

period, in violation of Labor Code §1174 and IWC Wage Order No. 7 § 7(A).

192.    As a result of Defendants' knowing, willful, and intentional failure to provide meal and rest breaks, Plaintiffs and the Class members are entitled to recover one (1) additional hour of pay at the employee's regular rate of pay for each work day that a meal and/or rest period was not provided, pursuant to Labor Code § 226.7 and 1WC Wage Order No. 7 § 11(D), and penalties, reasonable attorneys' fees, and costs pursuant to Labor Code §§ 218.5.

193.    Defendants' wrongful and illegal conduct in failing to provide Class members with meal or rest breaks or to provide premium compensation, unless and until enjoined by order of this Court, will continue to cause great and irreparable injury to Plaintiffs and the Class members in that Defendants will continue to violate these laws unless specifically ordered to comply with the same. The expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are already entitled. Plaintiffs and the Class members have no other adequate remedy at law to insure future compliance with the laws alleged herein to have been violated.

194.    Wherefore, Plaintiffs demand pursuant to Labor Code Section 227.7(b) that Defendants pay each Class member one additional hour of pay at the Class member's regular rate of compensation for each work day that the meal and/or rest period was not provided.

## COUNT V
## VIOLATION OF CALIFORNIA LABOR CODE § 226 and 1174
## FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

195.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

196.    Labor Code §§ 226 and 1174 provide that every employer shall, semi-monthly or at the time of payment of wages, furnish each employee, either as a detachable part of the check or separately, an accurate, itemized statement in writing showing the total hours worked, and the applicable hourly rates and corresponding total

number of hours worked.

197.  At all relevant times, Defendants failed to maintain proper records and furnish Plaintiffs and the Class members, either semi-monthly or at the time of each payment of wages, an accurate, itemized statement conforming to the requirements of Labor Code §§ 226 and 1174.

198.  At all relevant times, Defendants failed to furnish Plaintiffs and the Class members with accurate wage statements in writing, showing: (1) gross wages earned; (2) total hours worked by each respective employee; (3) all deductions; (4) net wages earned; (5) the inclusive dates of the period for which the employee is paid; (6) the name of the employee and only the last four digits of his or her social security number or an employee identification number; (7) the name and address of the legal entity that is the employer; and (8) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

199. Plaintiffs are informed and believe that Defendants knew or should have known that Plaintiffs and the Class members were entitled to receive wage statements compliant with Labor Code § 226 and 1174, and that Defendants willfully and intentionally failed to provide Plaintiffs and the Class members with such accurate, itemized statements showing, for example, accurate hours and overtime calculations.

200. Wherefore Plaintiffs demand that Defendants pay each and every Class member fifty dollars ($50.00) for the initial pay period in which the violation occurred and one hundred dollars ($100) for each subsequent violation, up to a maximum of four thousand dollars ($4,000.00) pursuant to Labor Code § 226, as well as reasonable attorneys' fees and costs.

## COUNT VI
## VIOLATION OF CALIFORNIA LABOR CODE § 2802
## FAILURE TO INDEMNIFY EMPLOYEES' EXPENSES AND LOSSES

201.  Plaintiffs re-allege and incorporate all previous paragraphs herein.

202.  California Labor Code § 2802 provides that an employer shall indemnify his

1  or her employee for all necessary expenditures or losses incurred by the employee in

2  direct consequence of the discharge of his or her duties.

3      203.   During all relevant times, Defendants knowingly and willfully violated

4  California Labor Code § 2802 by failing to pay Plaintiffs and members of the California

5  Class who are no longer employed by Defendants all expenses and losses owed as alleged

6  herein.  Defendants are therefore liable to Plaintiffs and members of the California Class

7  for expenses and losses incurred in direct consequence of the discharge of Plaintiffs'

8  duties.

9      204.   Plaintiffs, individually and on behalf of the members of the California Class,

10  respectfully request that the Court award all expenses and losses due, and the relief

11  requested below in the Prayer for Relief.

## COUNT VII

## VIOLATION OF BUSINESS AND PROFESSIONS CODE, § 17200, *et seq*.

14     205.  Plaintiffs re-allege and incorporate all previous paragraphs herein.

15     206.  Defendants engaged and continues to engage in unfair business practices in

16  California by practicing, employing and utilizing the unlawful practices described above,

17  including: (a) training and directing Agents to work off-the-clock without compensation;

18  (b) making deductions to Agents' paychecks to recover overtime premiums earned by

19  the employee; (c) requiring Agents to work overtime without lawful premium

20  compensation; (d) failing to provide lawful meal breaks or premium compensation in

21  lieu thereof; and (e) failing to provide accurate, itemized wage statements.

22     207. In addition, the conduct alleged in each of the previously stated causes of

23  action constitute an unlawful and for unfair business practice within the meaning of

24  Business & Professions Code § 17200, *et seq*.

25     208. As a result of Defendants' conduct, Plaintiffs and the Class have been harmed

26  as described in the allegations set forth above.

27     209. The actions described above, constitute false, unfair, fraudulent and deceptive

28  business practices within the meaning of California Business & Professions Code §

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

17200, *el seq.* By and through such unfair, unlawful and/or fraudulent business practices, Defendants obtained valuable property, money and services from Plaintiffs and the Class, and have deprived Plaintiffs and the Class fundamental rights and privileges guaranteed to all employees under California law.

210. Defendants were unjustly enriched by the policies and practices described herein, and those policies and practices conferred an unfair business advantage on Defendants over other businesses providing similar services which routinely comply with the requirements of California law.

211. Plaintiffs seek, on their own behalf, and on behalf of the putative Class members, full restitution of all monies withheld, acquired and/or converted by Defendants by means of the unfair practices complained of herein, as necessary and according to proof, and/or disgorgement of all profits acquired by Defendants by means of the acts and practices described herein.

212. Plaintiffs seek, on their own behalf, and on behalf of other Class members similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair business practices complained of herein. Defendants' unlawful conduct, as described above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiffs and all Class members in that Defendants will continue to violate these California laws unless specifically ordered to comply with the same. This expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are entitled under California law. Plaintiffs have no other adequate remedy at law to insure future compliance with the California labor laws and wage orders alleged to have been violated herein.

## COUNT VIII

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

213.  Plaintiffs re-allege and incorporate all previous paragraphs herein.

214.  A special relationship existed between Plaintiffs and Defendants as

employee and employer.

215. The employment relationship between the parties included an implied covenant of good faith and fair dealing, which required Defendant to act with fairness toward the other and to refrain from any action that would prevent Plaintiffs from realizing the potential benefits of their employment.

216. Plaintiffs and the other Agents agreed to work on a commission basis.

217. The commissions were in large part dependent on Defendants obtaining and providing leads to the Agents. The volume, quality and timeliness of the leads directly translated into the likelihood of closing sales, and in turn, earning commissions.

218. Defendants breached the covenant by limiting and manipulating the quality and volume of leads given to Agents.

219. For example, when hiring Agents, Defendants did not advise the Agents that the leads would be subject to limitations and other manipulations. It was implied that the Agents would receive viable leads with which to work on, free from improper limits and manipulation by Defendants.

220. Defendants also breached the covenant by supplying leads from customers who wanted loans.

221. Further, Defendants required Agents to make misleading statements to customers, or face limitations on their leads, but still be required to meet sales quotas for performance purposes, employment and bonuses.

222. By reason of said breach, Plaintiffs performance was materially hindered to the point of being impossible as promised, represented and contemplated at the time of hire, and they sustained damages in the form of monetary losses.

## COUNT IX

## DETRIMENTAL RELIANCE/PROMISSORY ESTOPPEL

223. Plaintiffs re-allege and incorporate all previous paragraphs herein.

224. As more fully stated herein, Defendants made promises to each of the Plaintiffs, specifically to provide them with sales leads in a fair manner, including

especially not in a manner that required misstatements and fraud on behalf of the Agents, but ultimately failed to distribute the leads in a fair manner.

225.    In reliance on Defendants' promise of commission payments based on leads received from Defendants, Plaintiffs decided to pursue efforts to acquire "consumers" for Defendants' debt relief programs rather than pursue other more lucrative employment endeavors.

226.    Plaintiffs expended their limited time, money, and other resources in pursuit of and for the benefit of Defendants' interest.  Plaintiffs did so due to a reasonable reliance on Defendants' representations, including, but not limited to, those made in the employment offer

227.    Had Defendants' above-described representations not induced Plaintiffs' subsequent actions and reliance thereon, Plaintiffs' limited resources would have been available to be used in a more profitable manner.

228.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages such as monetary income.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on their own behalf and on the behalf of the putative Collective and Class members, request judgment as follows:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.    Designating the named Plaintiffs as Representative of the proposed FLSA collective;

c.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under the FLSA;

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28

d.     Certifying the proposed Rule 23 Class;

e.     Designating Plaintiffs as representatives of the proposed Rule 23 Class;

f.     Appointing Plaintiffs' counsel as Class Counsel;

g.     Declaring that Defendants willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

h.     Granting judgment in favor of Plaintiffs and against Defendants and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) of Plaintiffs' regular rate (including the shift differential where applicable) multiplied by all off-the-clock hours that Plaintiffs worked in excess of eight (8) hours per day and/or forty (40) hours per week for the past four years;

i.     Awarding liquidated damages in an amount equal to the amount of unpaid overtime wages found due and owing;

j.     For statutory and civil penalties pursuant to Labor Code §§ 225.5, 226(e), 226.3, and 226.7;

k.     For disgorgement and restitution to Plaintiffs and other similarly effected Class members of all funds unlawfully acquired by Defendants by means of any acts or practices declared by this Court to violate the mandate established by California Business and Professions Code § 17200, *et seq.*;

l.     For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business and Professions Code § 17200, *et seq.*;

m.     For an injunction prohibiting Defendants from engaging in the unfair business practices complained of herein;

n.     For an injunction requiring Defendants to give notice to persons to whom restitution is owing of the means by which to file for restitution;

o.     For actual damages or statutory penalties according to proof as set forth in California Labor Code §§ 226, 1174, and IWC Wage Order No. 7, § 7(A)

35

related to record keeping;

p.   For an order requiring Defendants to show cause, if any there be, why they should not be enjoined and ordered to comply with the applicable California Industrial Welfare Commission wage orders related to record keeping for Defendants' employees related to same; and for an order enjoining and restraining Defendants and their agents, servants and employees related thereto;

q.   For pre-judgment interest as allowed by California Labor Code §§ 218.6, 1194 and 2802(b) and California Civil Code § 3287 and other statutes;

r.   Awarding civil penalties pursuant to California Labor Code § 2698, *et seq.*;

s.   For reasonable attorneys' fees, expenses, and costs as provided by the FLSA, California Labor Code §§ 218.5, 226(e) and (g), 1194, 2802 and California Code of Civil Procedure § 1021.5; and

t.   For such other and further relief the Court may deem just and proper.

## JURY DEMAND

Plaintiffs, , individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Respectfully Submitted,

Dated: December 14, 2017

By: /s/ Trenton R. Kashima
      Trenton R. Kashima
Trenton R. Kashima, Esq.
FINKELSTEIN & KRINSK, LLP
550 West C St., Suite 1760
San Diego, CA 92101
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

James Hawkins, SBN 192925
james@jameshawkinsaplc.com

36

1 | Gregory Mauro SBN 222239
2 | greg@jameshawkinsaplc.com
  | JAMES HAWKINS, APLC
3 | 9880 Research Drive, Suite 200
4 | Irvine, CA. 92618
  | Tel: 949-387-7200
5 |
6 | Jason J. Thompson (*pro hac vice forthcoming*)
  | jthompson@sommerspc.com
7 | Jesse L. Young (*pro hac vice forthcoming*)
  | jyoung@sommerspc.com
8 | SOMMERS SCHWARTZ, P.C.
9 | One Towne Square, Suite 1700
  | Southfield, Michigan 48076
10 | Telephone: (248) 355-0300
11 | Facsimile: (248) 436-8453
12 |
13 |
14 | *Counsel for Plaintiff and Proposed Class and Collective Members*
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND